A. B. SYMNS & CO. v. THE EXCHANGE NATIONAL BANK,
OF EL DORADO.

ACTION *on Draft—Evidence—Harmless Error.* The evidence examined,
and *held* sufficient to sustain the verdict and judgment of the court
below, without regard to the alleged statements of the agent, Larri-
more, as testified to by the witnesses Fleming and Redden. *Also held,*
in view of the other evidence in the case relating to the same subject,
that, if error at all, the admission of the said testimony of Fleming
and Redden was not such error as would justify this court in revers-
ing the judgment of the trial court. *Further held,* That there is no
error in the instructions of the trial court of which the plaintiffs can
complain.

*Error from Butler District Court.*

ACTION by A. B. Symns & Co. against the Exchange Na-
tional Bank, of El Dorado, Kas., on a draft. Verdict and
judgment for defendant, at the March term, 1889. The plain-
tiffs complain and come to this court.

*Clogston, Hamilton, Fuller & Cubbison,* for plaintiffs in
error.

*Redden & Schumacher,* for defendant in error.

Opinion by STRANG, C.: Action on a draft drawn by the
defendant bank on the Union National Bank, of Kansas
City, in favor of the plaintiffs, A. B. Symns & Co., for
$126.50. The answer of the defendant admits the execution
of the draft, but it alleges the existence of the following facts
as a defense: A. E. Bennett, a merchant of El Dorado, Kas.,

was in debt to A. B. Symns & Co., and on or about May 21, 1888, they drew upon him for the amount of the draft sued on in this case. Bennett went to the defendant bank, where he kept his account, and purchased the draft sued on, giving in payment therefor his check against his account in said bank. After Bennett had left the bank, and after the draft purchased by him in favor of A. B. Symns & Co. had been delivered to him, it was discovered that Bennett had at the time no funds in said bank to check against. At this time, one Larrimore, agent of A. B. Symns & Co., was in El Dorado for the purpose of collecting or securing the full amount of Bennett's indebtedness to said firm. In pursuance of said object said Larrimore purchased and took an absolute bill of sale of all of Bennett's stock, and the fixtures in his store, in payment of the full debt owing by him to the plaintiffs. The cashier of the defendant bank informed Larrimore of the draft purchased by Bennett for his firm, and that the draft was not paid for, and asked Larrimore to protect the bank against said draft in his settlement with Bennett. Larrimore said he had purchased and taken the stock of goods in payment of the whole debt of Bennett to his firm without regard to the draft. Redden, the president of the defendant bank, called on Larrimore and also explained to him the situation of his bank in regard to the draft, and asked Larrimore if he had enough to pay the firm in full without taking into account said draft. Larrimore said he had taken the stock in payment of the full debt; that he had not taken the draft into account. Redden then said he would stop payment of the draft, and Larrimore said, "All right, I've not taken it into consideration." Payment of the draft was then stopped. The plaintiffs then replied, denying the facts set up in the answer. The case was tried by the court and a jury, and resulted in a verdict for the defendant. The plaintiffs bring the case here for review, and assign the following errors: (1) The admission of testimony over the objection of the plaintiff; (2) the instructions given by the court to the jury.

The objection to the evidence relates to the admission of

the statements of Larrimore to Fleming, Schumacher, and Redden, in regard to the consideration for the goods, accounts and fixtures named in the bill of sale, obtained from Bennett by Larrimore for A. B. Symns & Co. The plaintiffs contend that the alleged statements of Larrimore testified to by Fleming and Redden, to the effect that he had made an absolute purchase of the property named in the bill of sale, in full payment of the whole debt of A. B. Symns & Co. against said Bennett, without taking into consideration the draft that day sent by Bennett to A. B. Symns & Co. for $126.50, were erroneously admitted and constitute error, because they were statements of an agent made after the transaction to which they related was completed. The record shows that Larrimore was the collection agent of A. B. Symns & Co. He says in his evidence that he got a letter from the plaintiffs to go to El Dorado to collect or secure their claim against Bennett. He went there, and, for the purpose of getting payment of said claim, purchased the entire stock of goods of said Bennett, together with notes and accounts amounting to $500, and all the fixtures in the store of said Bennett. Bennett claimed at the time that the goods alone would inventory over $1,000. He took an absolute bill of sale of all of said property, and he says he never returned any of said property nor any of the proceeds thereof to Bennett.

Larrimore took possession of the Bennett store, including the goods, accounts and fixtures purchased. It is conceded that he had authority from his principals to collect or secure their debt against Bennett, and for that purpose to purchase Bennett's stock of goods, the fixtures in his store, and all or a portion of his outstanding and uncollected notes and accounts. Such an agency is a very general one. It seems to include authority to exercise his own judgment in the method to be pursued by him in making the collection. He was not limited to a collection of the debt in money, or securing the payment thereof in money, but was authorized to purchase goods, accounts and fixtures to pay such debt. With such general authority over the debt to be collected, when did the

transaction which constituted the collection end? It did not end when the agent had obtained for his principals a bill of sale of the property named therein, because he went further and took possession of the store in which the goods were, and possession of the goods and notes and accounts and fixtures. Did the transaction end with the possession of the goods and other property? Clearly not. Something had to be done with the property. It had to be sold on the ground, and converted into money, or shipped elsewhere and turned to the account, in some way, of the firm. We think it a very serious question whether the transaction was completed until the property was either converted into money, or turned over by the agent to his principals on the debt owed by Bennett to them; and, if not, then any statement made by the agent while in possession of the goods, and before they were converted into money or turned over by him to the firm, relating to the transaction, would bind the principals and be properly admissible in evidence.

But in this case there seems to be an abundance of evidence to sustain the finding of the jury and the judgment of the court without the statements of Larrimore made to Fleming and Redden out of court. Larrimore was called as a witness by the plaintiffs, and as such testified in court, in answer to repeated questions, that he took the property named in the bill of sale in full payment of the whole debt of Bennett to the plaintiffs, and that in the settlement with Bennett he did not take the draft into account. It is true that when reëxamined, and after asked the direct question by counsel for plaintiffs, he said he did take the draft into account. But when recrossed, he said he did that the next morning after he had taken possession of the store, and when questioned further on this point he again contradicts himself; and we think shows that he did not make any allowance for the draft at any time. This evidence of Larrimore renders his alleged statements, testified to by Redden and Fleming, somewhat immaterial. Larrimore also says as a witness that, at the time he took the bill of sale, the draft was mentioned by Bennett and that he

refused to take it into account.   This is corroborated by Mr. Cubbison.

The objection to Mr. Schumacher's testimony is not tenable because his conversation with Larrimore was before the latter had taken possession of the goods and immediately after he obtained the bill of sale.   In that conversation Larrimore told Schumacher he had taken an absolute bill of sale of the property in full payment of the whole debt of Symns & Co.   He also said to Schumacher at that time that the stock of goods was more than sufficient to pay his claim, and that he also had an assignment of book accounts.   This evidence of Mr. Schumacher was not objected to.

Another witness testified upon this point.   Mr. Bennett's deposition was taken and read in evidence, and however objectionable some portions of it may have been, as the expression of an opinion, his statement of the transaction with Larrimore was not subject to such objection.   Mr. Bennett was a party to the bill of sale.   He knew as much about the terms of sale of the property to Larrimore as the latter did, and had quite as good a right to state them.   He also swears that Larrimore took the property in full payment of the whole of the debt of A. B. Symns & Co., and that the draft for $126.50 was not taken into account in the transaction at all.

With so much concurrent testimony upon the question of the consideration of the bill of sale by Bennett to the plaintiffs, and upon the question as to whether the draft was taken into consideration in said transaction, we do not think the admission of the testimony of Fleming and Redden relative to the alleged statements of Larrimore was material error, if error at all, and especially so as Larrimore went upon the stand in behalf of the plaintiffs and made under oath practically the same statements.

Counsel for plaintiffs say the court erred in instructing the jury that the defendant must prove by a preponderance of the evidence that Bennett did not, at the time the draft was issued, have funds to the amount of the draft in the bank. This claim is based upon the ground that the draft had, in the

usual course of trade, come into the hands of innocent third parties, and therefore it was no defense for the bank to say it had received no consideration for it. Counsel seem to have labored under some mistake in this connection. The draft was drawn to A. B. Symms & Co., who retained it and sue on it themselves. It was never transferred, and was not in the hands of innocent purchasers for value without notice. The court charged the jury, in effect, that, as the defendant admitted the execution of the draft, it must prove by a preponderance of the evidence that it received no consideration for the draft, and also that the plaintiffs paid nothing for it. The instructions were meager, but there is in our judgment no error therein prejudicial to the rights of the plaintiffs.

We recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.